Good morning. We have a very heavy calendar this morning. We often try to be a little bit flexible on rebuttal time and all. We don't have much flexibility today, so we're going to hold you to your time. So that's kind of fair warning to all the lawyers. Watch your time and reserve what you want for rebuttal, but we, because we have another two to three hours here, are not going to be able to give you additional time this morning. So you may proceed. David Cohen Good morning, Your Honors. David Cohen on behalf of Mr. Hickey. David Cohen You also need to speak up because that microphone only picks up people who speak up. David Cohen Good morning, Your Honors. David Cohen on behalf of Mr. Hickey. David Cohen Your Honors, on the question of the appealability of the grand jury issue, I'd like to again call the Court's attention to the recent case of United States v. Byrd, which the government cited in its brief 342 F. 3rd. 1045, in which the Ninth Circuit held that no other court had really addressed the question of when there's an interlocutory appeal when an indictment ceases to be an indictment after Midland Asphalt. And in that case, the Ninth Circuit held that an interlocutory appeal does lie if an indictment fails to state an offense. In such a situation, the Cohen rule is satisfied and an indictment ceases to be an indictment. Judge Golden Well, how would that apply to if looking behind a facially valid indictment? David Cohen Well, our point here is that if no evidence whatsoever, I'm talking about the jurisdiction of this Court, if no evidence whatsoever is presented to the grand jury, then an indictment ceases to be an indictment. The recent Byrd case establishes that if an indictment does cease to be an indictment, there's an interlocutory appeal. Judge Golden All right, but how does that go to our facts here? Because there was evidence presented here. David Cohen There was some evidence presented, but our view is that there was no evidence presented on the question of whether there was a mailing. In other words, each offense has several elements. The government, I mean, I'm making the argument that I'm, for the sake of argument, I'm saying let's assume that the government presented no evidence on any element, and then the government submitted a document to the grand jury and said, here's the indictment. Mr. Foreman, we want you to sign off on this. This is proper under the law, and the grand jury goes ahead and indicts, and no evidence was presented. So that's point number one, and let's look at that. It's my understanding that it's the government's position that that indictment is facially invalid, and the Court can't look behind the question of whether or not any evidence was presented to the grand jury. But my first point is, first of all, if it does cease to be an indictment, it's an interlocutory appeal, and this Court can review it. Now, this Court, once reviewing it, in our view, should take a look at the question of was any evidence presented. Now, the judge— Justice Sotomayor I think the problem you have with it is the second part of the requirement. That is, that in order to have an interlocutory appeal, you have to demonstrate it's not reviewable on final judgment. Clearly, the issue can be reviewed on final judgment. So why should—even assuming your first argument, how can you get across the requirement that it is something that can be reviewed on final judgment? Mr. Foreman No, that's—and that's what I'm trying to address, Your Honor. That's why I think the Byrd case is significant, because it's the first case that I've seen that essentially said this question of whether an indictment ceases to be an indictment is reviewable now. The reason is this. A person has a right to be tried only after a grand jury has passed upon the evidence. Now, if the grand jury is presented with no evidence, it's true that later on—and in the case I posited, there could be a piece of paper presented to the grand jury, an indictment. Later on, there's a trial, a person is found guilty beyond a reasonable doubt, and the courts have looked at that before and said, well, look, that question, the evidence of sufficiency, all issues in terms of the trial before the penitentiary, that can be reviewed later on. There's no doubt about that. Ms. Atkins Well, you also have mechanisms in the process of trial to address no evidence, don't you? Mr. Foreman That's true. Ms. Atkins I mean, both, you know, after the prosecution rests their case or are motions challenging that. So, you know, aren't we like about six years from when these facts take place that if, you know—and we're going to be further if you can always appeal at this particular juncture. Mr. Foreman Right. And all those points are correct. There's no doubt that there's a Rule 29 motion. There's no doubt that time is passing. But that's why I'm calling the Court's attention to this Byrd case. Ms. Atkins Right. But what—under Byrd, then, just to clarify, what's the fundamental defect? Mr. Foreman That one of the elements of the offense was not stated in the indictment. Ms. Atkins And that element was? Mr. Foreman Whether somebody was a—I think it was a jurisdictional question in terms of a Native American. Mr. Kline It wasn't stated on the face of the indictment. Ms. Atkins On the face of the indictment. Mr. Kline It was not stated. Ms. Atkins It has nothing to do with evidence that goes before the jury. Mr. Kline Well, no, it has to do with—no, you're right. There's no question about that. My only point is that the—I see Byrd as recognizing my point, which is if the argument—if somebody makes an argument that an indictment ceases to be an indictment, if somebody makes that argument, then that's something that's reviewable on interlocutory appeal. And my second point is, how could it possibly be the case that this Court can't review a circumstance where no evidence is presented to the grand jury? To me, that's when an indictment ceases to be an indictment as well, just like if an element is not alleged on the face. And following from that, there has to be evidence, some evidence, of each element of the offense presented to the grand jury. Now, in this case, Judge Chesney reviewed—we saw a snippet of the transcript. And in the snippet of the transcript that we saw, we saw no evidence of a mailing produced to the grand jury. And Judge Chesney, as I understand it, reviewed the balance of the grand jury testimony. And she even indicated, you know, you, counsel for the defense, might have a different view about whether any evidence was presented. And I acknowledge that you have not seen the transcript. So I think it's reviewable. And if the—and if this Court— Why do you—of course it's reviewable. We can review anything. But we're restricted to those issues that cannot be reviewed at the final judgment. Why do you say you can't review this at the time of—at the final judgment, if there is one? Because—because there are three issues under Cohen. It has to conclusively determine the disputed question, the issue that's being appealed. It has to resolve an important issue completely separate from the merits of the action. And be effectively unreviewable on appeal from a final judgment. Right. Now— Why is it the latter? The third. Why is it? Why does it meet that criteria? Because a person has the right—and this is what Burd indicates—a person has a right to be tried on an indictment that's presented to a grand jury. It's a Fifth Amendment right. It's true. I mean, there could be a right just to have a trial. But in the United States, we have a right first to be—first to have the evidence passed muster before a grand jury. And you can raise that issue after a final judgment. Why are you entitled to an interlocutory appeal over an issue that can be raised at the end? Because in Midland Asphalt, and in the Supreme Court cases that discuss this, and also in the Burd case, the grand jury—the right to be indicted by a grand jury implicates the right not to be tried at all. Wait a minute. Wait a minute. You're getting into a new issue. What case is it that says that—that you're entitled to an interlocutory appeal for us to search through the grand jury? You have a right not to be tried? Well, I think—I think the Midland Asphalt case has said—I think Justice Scalia said that in a circumstance—and recent Supreme Court cases have again said that it is very, very important—it's an important right to first have the evidence passed muster before a grand jury. But I've never heard that law before. And I—of course, I'm ignorant of a lot of law. But cite me the case— Oh, I'm far more ignorant than that. Cite me the case specifically that holds that. Well, I think the Burd case holds that. The Burd case holds that on the face of the indictment, it was absent. Well, I think it holds— That's not the Burd case. No, I— Give me the case that says that you're entitled to go through the transcript at this point, which is in camera, and have us review the transcript when we can do it at the end of the case. Because— What is that case? Well, I think Midland Asphalt and Burd together indicate that. I know that Your Honor is—Your Honor is taking a different view. I'm always interested in being educated on the law. It's just I've never heard of it before. Well, that's—I understand that. But I acknowledge that this point that I'm making right now is not something that was directly held by any other court in the United States. I acknowledge that. But what I'm saying by extension for Midland Asphalt and Burd and the Fifth Amendment— I understand that. Right. Because it implicates the right not to be tried. We have a—and that's what Midland Asphalt says and Burd says. We can't be tried if there isn't a proper grand jury indictment. Well, if you're—if you're acknowledging— And if it's handed to you later, then the error can never be corrected. It's an interesting point, because as the jurisprudence on the grand jury has developed over the years, the question has been, you know, when can any of these cases be appealed before trial? If we really do have a right to be tried—I'm sorry, to be indicted by a grand jury, if we really have a right to that, but it's never reviewable, then when is the government ever going to be held to the question of presenting evidence before the grand jury? Well, but you're essentially conceding that there's no case that is directly on point that says that, you know, addresses your issue. Why isn't it just a slippery slope that if we accept your view, that everything, every, you know, every ruling that people don't like that could be reviewed on a final judgment would now have an interlocutory appeal? There's no—it could be a slippery slope, but what I'm saying is it could be a slippery slope in the other direction. Well, but every time when people—if they win at the end as opposed to winning later, no one really likes that, but that isn't—but the law doesn't say that you're entitled to win early on very many issues. No, I—see, I disagree with that. I think that the law says that people have a right to have evidence presented before a grand jury, and if the government is not presenting evidence before the grand jury, and this Court holds that it's never reviewable, then— Well, but you also—you have it reviewed by a district judge. You can have it reviewed at the end when the—when the government rests their case, and then you can have it reviewed again on appeal. Well, you can't have— So it's not that it's not reviewable. It's just not reviewable when you want it reviewable by an appellate court. Or let me put it differently. It is reviewable if it meets certain standards. In other words, we have not said— Right. Right. In other words, we've drawn some lines, and so we've said, look, we can't go around having two trials and two appeals on every issue. Right. And so that was, of course—so that's actually the premise that we start with. In other words, there's predisposition against the interlocutory appeal. But I—I grant you, I think that it is appropriate to have an interlocutory appeal, and our challenge is to figure out on which side of the line do you fall within Byrd and the other cases. Okay. Let me—let me move on to the question of punishment, one of my favorite topics. This—our view is, is that Judge Alsop punished Mr. Hickey for the same conduct that's being alleged in the superseding indictment. And he made that clear on numerous occasions throughout the pendency of the SEC proceeding. Now— Is the penalty the same on the contempt as on what he—what the superseding indictment charges? The penalty is—is not—this is—these were civil—this was a civil contempt proceeding, and the penalty isn't the same. However, under the Hudson case, this Court should look at whether the—the civil penalty met—meets the criteria of punishment, and this case sets forth seven prongs of a test to look at, which we believe were met here. But in—in summary, the areas of punishment that Mr. Hickey believes applied to him in the SEC case are as follows. First of all, he argued to Judge Alsop that he had already paid the $1.1 million earlier on, during the course of the receiver collecting monies, during the course of turning over assets, during his receivership stage of the SEC proceeding. Judge Alsop rejected that. He said, you waived those arguments, you're not allowed to raise those arguments, and you have to pay an additional $1.1 million, or I'm going to put you in jail. Okay, those address one fund, correct? Yeah, exactly. All right, so what I'd like you to tell me is, how are Mr. Hickey's actions addressed in Judge Alsop's civil contempt order the same as the actions addressed in the criminal indictment? Because the criminal indictment alleges a Ponzi scheme involving funds one, two, and three. How is that the same as the civil, which is the fund two? The civil case alleges securities fraud as to fund two, but also addresses what happened with fund one. The arguments that were made before Judge Alsop, not only in the civil case, but also in the class action case, are arguments that the scheme is the same scheme that's alleged in the indictment, in the superseding indictment. And Judge Alsop made clear in his comments throughout the civil proceeding, he said, you know, Mr. Hickey, you've been charged with fraud in the criminal case, there's the class action case, there's the fraud here, and he made numerous comments indicating that he believed him to be a fraudster, that he basically barked the cork, and that he was going to make sure that he didn't get away with it. Now, the areas of punishment that I wanted to identify were that, you know, we believe that Judge Alsop, on pain of basically having a marshal in the back of the courtroom every time one of these payments was due, and not allowing Mr. Hickey to make his set-off arguments that he had paid it earlier, had Mr. Hickey pay an additional $1.1, $1.3 million, and we're reviewing, we're seeking review of that very issue now, because the first time we came to this court, the court said, look, until the entire $1.1 million is paid, Mr. Hickey doesn't have jurisdiction even to have this reviewed. Now that the $1.1 million has been paid, Judge Alsop has left in place, even though the $1.1 million has been paid, and even though $200,000 in post-judgment interest has been paid, Judge Alsop has left in place against Mr. Hickey and the John Hickey brokerage an asset freeze. This is an asset freeze that requires Mr. Hickey to live on $10,000 a month, to keep track of all of his bank statements, to turn over all of his bank statements to the SEC. It's an extraordinarily restrictive freeze and order, and it's still in place, and Judge Alsop said he's going to keep it in place until all appeals are exhausted, even though Mr. Hickey paid the $1.1 million, and now he's paid the additional $200,000. This deals with your collateral estoppel argument? Or the double jeopardy? Or double jeopardy. In collateral estoppel, the same parties have to be involved, and the government takes the position the SEC is an independent agency, not at all connected with the Department of Justice. Right. And this Court has so held, by the way, and that case has been cited. This Court has so held. Our view is that after the Sarbanes-Oxley Act was passed, the SEC has now become an enforcement arm of the Department of Justice, and that's basically our position on that. Where do we find a case that will let us do that in the Ninth Circuit? I haven't. I'm just making that argument by extension from the Act. But this Court has held that they are not the same. Right. And wouldn't we have to overturn that decision in order to accept the argument? Yes. So this is really a petition for an in-bank determination to overturn that case. Well, I think this Court could find that the intervening passage of the Sarbanes-Oxley Act is a change in circumstance. But other than that, it's true it would have to be reviewed in-bank. Yeah. I'm having trouble under the double jeopardy figuring out how it would meet Blockberger or Hudson, either one. Well, the point that I'm trying to make about that is that Judge Alsup, separate and apart from what the allegations were in the civil case, he made clear that I'm going to punish you for what you did, Mr. Hicks. So let me just get clear. What you're saying is if we looked at it on a strictly facial basis, maybe it wouldn't meet Blockberger or Hudson, but that it's Judge Alsup's kind of additional imprimatur that slops it over into being the same. Well, it certainly wouldn't meet Blockberger. I think it would meet Hudson, perhaps on a facial basis. But, yes, that is my point. Okay. I understand your point. Did you want to reserve some time for rebuttal? Yes. Thank you. Good morning, Your Honors. May it please the Court. I'm Robin Harris, an assistant United States attorney from the Northern District of California. I'd first like to address counsel's arguments concerning the applicability of the Byrd case to the interlocutory jurisdiction in this case.  Byrd was fundamentally different than this case because the indictment in Byrd failed to allege an essential element of the crime that was charged, and this Court found that the defendant was not put on notice because that essential element was missing from the face of the indictment. That is not what the defendant in this case is claiming. The defendant in this case is claiming that although the indictment alleges a mailing and properly satisfies the elements of the offense, this Court should look behind what the grand jury considered as evidence and determine whether or not there was enough evidence presented at the grand jury stage to allow this case to proceed to a petty jury. There's legions of cases that say that that is improper and not the basis for interlocutory jurisdiction, and I would just urge this Court to continue to decline to accept jurisdiction at this stage. So your distinction is just facially valid or facially invalid? That's the threshold distinction. But beyond that, Judge Chesney did do what I'm urging this Court to decline to do until this case is tried on its merits. Judge Chesney did go behind the facially valid indictment, and she did review the entire grand jury transcript, and she made a factual finding that based on her review, there was probable cause presented to the grand jury of the essential element that the defendant is claiming is missing. There is no showing that what Judge Chesney did was clearly erroneous, and although the government objected to her going behind the facially valid indictment, she did do that, and there's no reason to disturb that on appeal because there's no finding or showing that what she did was clearly erroneous. Well, that doesn't mean it isn't reviewable. The question is when. Correct. And the threshold question is, is it reviewable now? And the Byrd case does not say it's reviewable now. And so the government's position is contrary to what Mr. Hickey is arguing. This is not the proper basis of an interlocutory appeal, and unfortunately by appealing it at this stage, all that happened was that we had a complete disruption of the criminal trial on the eve of trial. It doesn't indicate that Byrd commands it. He just says if you combine Byrd and Midland Asphalt, it leads to the position that we should. What's your response to that? Well, I believe it was Your Honor that asked, is there a case that says we're permitted to do that, and my answer is not only is there a case that says you're not permitted to do that, but this Court has specifically so held in Cazada. The Cazada decision is almost on all four corners with this particular factual scenario. There in Cazada, the defendant was seeking interlocutory appeal, and he was claiming that there was insufficient evidence presented to the grand jury, and this Court held that it did not have interlocutory jurisdiction to review whether or not there was sufficient evidence. That's just a different way of saying was there probable cause for the grand jury to indict. So not only does Midland Asphalt preclude this Court from doing what it is that Mr. Hickey seeks, but this Court has actually addressed that issue square on in Cazada. I'd also like to address the issue of double jeopardy, which has been raised both in connection with probable cause and also in connection with what it is that Judge Ossoff did or didn't do. Well, now, do you think that we can address that as long as it raises a colorable issue? Double jeopardy? Yes. The government's position is that in this case, there was no colorable issue of double jeopardy raised below. What standard should an appellate court apply to determine whether a claim is frivolous or not? Well, I think as a threshold matter, the standard should be whether there is a colorable showing of prior punishment or jeopardy and the threat of future jeopardy in a second action. And I would cite the Court to an Eighth Circuit case, United States v. Crest at 58F3rd 370 at page 372, which set forth the standard for a colorable claim and found that to be a colorable claim, there would be a requirement of a colorable showing of previous jeopardy and the threat of repeated jeopardy. We have, in this case, no threat of previous jeopardy. And I'd like to clarify for this Court what it is that Judge Ossoff actually did. What Mr. Hickey is seeking this Court to find was jeopardy is not the disgorgement order, but Judge Ossoff's order of contempt. What Judge Ossoff was seeking to do was to force Mr. Hickey to comply with Judge Ossoff's order, and the contempt order was coercive in nature, not punitive. There was no punishment. The only punishment that Mr. Hickey faced through the contempt order was to comply with Judge Ossoff's disgorgement order. That's very different than criminal punishment, which will be imposed if Mr. Hickey is convicted on the mail fraud indictment. I think, at least the way I understood the argument, is that the potential incarceration for violation of contempt would place him basically in a dual punishment situation for events that arose out of the same nucleus of facts. You may disagree with it, but that's what I thought the double jeopardy argument was. And we're always walking a fine line to decide do we have jurisdiction and then do we go ahead and decide it on the merits. But why wouldn't that be at least a colorable claim,  because punishment was not imposed pursuant to Judge Ossoff's contempt order. Mr. Hickey purged the contempt. He was never incarcerated. He was never sanctioned, and the contempt order is now moot. It doesn't exist anymore. And, in fact, in the civil case, this court refused to review the contempt order because it found that Mr. Hickey had purged the contempt and that the court didn't have jurisdiction. So if the court didn't have jurisdiction to review the contempt order in the first instance, the government's position would be that it does not have jurisdiction to resurrect a nonreviewable contempt order for the basis of jeopardy in this particular appeal. So it's our position that it isn't even a colorable claim in the first instance, but if you are going to review the claim on its merits, it fails on all levels. As an initial matter, I think Judge McCuney had said that Mr. Hickey's position is that Judge Ossoff was imposing contempt out of the same nucleus of facts. But the Blockburger test isn't an element test. It isn't a fact test. It's an element test. I think he already said it wouldn't meet Blockburger. So what Mr. Hickey would be asking this court to do is to reverse Blockburger, which clearly is not appropriate and is not consistent with any Ninth Circuit law or Supreme Court law. In terms of the collateral estoppel issue, Judge Wallace asked a question about whether we have the same parties here. And the passage of the Sarbanes-Oxley Act is inconceivable as a basis for converting the SEC as an independent commission charged with enforcing the federal securities laws into the federal sovereign vindicating the United States criminal laws. They're just not the same, and nothing about Sarbanes-Oxley would compel a different conclusion. Sarbanes-Oxley and Title 18 United States Code Section 1519 is not charged in the superseding indictment, and it doesn't provide any basis for finding that the SEC and the United States Attorney's Office are the same party. And then even if Mr. Hickey could get through that threshold issue, which he can't, there wasn't the same issue decided before Judge Alsop. Judge Alsop had one piece of Mr. Hickey's wrongdoing in front of him, and that was the issue of disgorgement. What Judge Chesney has before her and what will ultimately be tried to the petty jury is a whole host of wrongdoing that's laid out in the superseding indictment involving three different funds and multiple wrong acts on Mr. Hickey's part, not just the amount of money that personally went into his pocket because of this fraud. And so it wasn't the same issue at all. And Judge Chesney made factual findings that went straight to that issue in which there's been no showing were clearly erroneous. I am assuming from Mr. Cohen's argument that he has abandoned the issue of the stay on this appeal. There is no jurisdiction clearly for this court to review Judge Chesney's denial of the stay of a criminal trial. And as of this point, yes, we have no criminal trial date, and there's nothing to review. I'd also like to advise the court as to where Mr. Hickey's SEC matters stand. He has paid all of the disgorgement that Judge Alsop required. He has also paid the interest that Judge Alsop required. So the disgorgement order has been satisfied, and there is no contempt order that exists in any form. Mr. Hickey is not in jeopardy of anything before Judge Alsop at all, even if it were to be considered punishment, which it's not. It was simply a vehicle to ensure compliance with Judge Alsop's order. But if the court were to find that Judge Alsop, what he did was punishment, Judge Alsop would have no ability to enforce his orders. It would essentially eviscerate the district court's ability to enforce a civil order when you have a recalcitrant defendant who's refusing to comply with a court order. The district court judge would always be in fear of using the tools that have been made available to it to enforce court orders because that could be construed by this court in a later proceeding as jeopardy when that same defendant faces a parallel criminal proceeding, and clearly the purpose of civil contempt is to force a recalcitrant defendant to comply with a legitimate district court order that's otherwise not being complied with. And that's all Judge Alsop did here. Mr. Hickey's only consequence was paying Judge Alsop's order, and that was the only threat that was in front of Mr. Hickey. If he didn't pay it, certain things would happen to him. He did pay it, he purged the contempt, and the order no longer exists. So there was no punishment, and there are different elements between civil contempt and criminal mail fraud, and there's just no basis for any finding of double jeopardy in this case. Unless the panel has any further questions.  Thank you. Thank you. I strongly disagree with the government's contention that there is no existing consequence to Mr. Hickey. Do you agree the stay is moot? I don't agree with that either. No, no, we're asking for a stay. We were asking for a stay of the criminal proceedings until the conclusion of the SEC matter. Now, the SEC matter is still pending. Not only do we have a current appeal of the entire $1.1 million, which we filed because the Ninth Circuit said we couldn't file it earlier, we had to wait essentially until everything had been paid. So that's pending. We also have a pending appeal of the $200,000 interest order. And contrary to what the government just said. Do you have a stay pending appeal on that? No, we moved for it and it was denied by the Ninth Circuit. So we moved for it in that case. We moved for it in this case. And what we're seeking is to get back the $1.1 million. We're seeking to get back the $200,000 because Mr. Hickey needs to hire experts and pay for his defense in this trial. And our contention all along has been that he had already paid the $1.1 million. That had been collected earlier. How do we have jurisdiction to review that? Well, I don't think that there has to be a trial date set under the case that I cited. No, but how do we have jurisdiction? Well, I cited a number of cases that indicate that a stay denial can be appealed interlocutorily. So that's my position from those cases. All right. But I don't think that it matters whether the trial date had been set. But on this other point, there is an existing order from Judge Alsop continuing the acid freeze against Mr. Hickey. And there are existing appeals in that case. So the idea that that entire issue is moot is not correct. Separate and apart from that, if Mr. Hickey was punished by Judge Alsop, and that's our contention, and I agree with the government, we're talking about how we handle the contempt proceeding, not the disgorgement order, because that would be precluded by this court's jurisprudence. Thank you. Okay. Your time is concluded, and the case of United States v. Hickey is submitted. The next case for argument this morning is United States v. Lewis.
judges: Wallace, McKeown, Callahan